IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOE et al., <br><br> Plaintiffs, <br><br> v. <br><br> ALAMEDA UNIFIED SCHOOL DISTRICT, et al., <br><br> Defendants. | No. C 04-02672 CRB <br><br> **MEMORANDUM AND ORDER RE: CITY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Plaintiffs, a minor and her parents, filed this action against defendants under 42 U.S.C. section 1681 ("Title IX") and 42 U.S.C. section 1983, as well as various state law and tort claims, arising out of a purported incident of child molestation by a teacher at a daycare center. Now pending is a motion for summary judgment filed by defendants Alameda Unified School District ("AUSD" or "District"), Woodstock Child Development Center ("Center"), and Woodstock Elementary School (collectively "City defendants"). The individual defendant, Roy Cameron, is not part of this motion. After carefully considering the parties' moving papers, including supplemental briefing, and with the benefit of oral argument, the motion for summary judgment is GRANTED IN PART and DENIED IN PART. This Memorandum and Order supercedes the previous Memorandum and Order on this motion, which shall be deleted from the docket forthwith.

# BACKGROUND

## I. Undisputed Facts

The facts of this case are limited and straight-forward. In July and August of 2003, plaintiff M. Doe was a four year-old student at Woodstock Child Development Center ("Center"), a daycare facility operated by the Alameda Unified School District. Defendant Roy Cameron was a teacher at the Center. Plaintiffs claim that Cameron sexually assaulted her some time between July 21, 2003, and August 10, 2003. A police investigation followed, and upon learning of this investigation, the District suspended Cameron before eventually dismissing him.

At least one year prior to this incident, Diana Chiobotti, received complaints from staff members about Cameron's conduct in interacting with children. The specifics of the complaints and the conduct are in dispute. It is undisputed that Chiobotti, the director of the Center at all relevant times, had discussed with defendant Cameron the proper way to hold children in response to some complaints by other Center employees at the staff meeting. Chiobotti received no other complaints at any other time regarding Cameron.

## II. Procedural History

After exhausting administrative remedies with the District, plaintiffs filed an Amended Complaint on September 10, 2004, alleging federal law claims under Title IX and section 1983, as well as a number state law claims. On October 14, 2005, City defendants filed this motion for summary judgment. The Court held oral argument on November 21, 2005, at which time it permitted the parties to submit supplemental briefing on the issue of of Chiobotti's policy-making authority.

Of particular relevance, defendants contend in their motion that there is no admissible evidence to support plaintiffs' claim that Cameron sexually abused or molested M. Doe. Even if he did, defendants argue that the District had no prior actual notice of sexual abuse or molestation as required under Title IX, and there is no evidence that the District had an official custom or policy that resulted in the deprivation of M. Doe constitutional right as

required under section 1983.[1]  Finally, defendants claim that the City did not act negligently in hiring, supervising, or retaining Cameron.

### STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law." Fed. R. Civ. P. 56(c).  The party moving for summary judgment bears the initial burden of demonstrating that there is an absence of evidence to support the non-moving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  In applying this standard, the Court must construe all facts and reasonable inferences therefrom in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Diruzza v. County of Tehama, 323 F.3d 1147, 1152 (9th Cir. 2003).

A principle purpose of the summary judgment procedure is to isolate and dispose of factually unsupported claims.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).  A party moving for summary judgment that does not have the ultimate burden of persuasion at trial has the initial burden of producing evidence negating an essential element of the non-moving party's claims *or* showing that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.  See Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102 (9th Cir. 2000).

If the moving party has satisfied its initial burden of production, Rule 56(e) "requires the non-moving party to go beyond the pleadings and by affidavits or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'"  Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)). The non-moving party may not rest upon mere allegations or denials of the adverse party's

---

[1] In their Memorandum in Support of the Motion for Summary Judgment, defendants also contest whether M. Doe's parents have standing to make the section 1983 and state law claims. Yet defendants do not address plaintiffs' response to this in their Reply. In addition, plaintiffs' supplemental brief represented to the Court that plaintiffs' counsel intends to file an application for guardian ad litem on behalf of M. Doe's parents. For these reasons, the Court finds that the Doe parents have standing to pursue this litigation at this time. This ruling does not prevent defendants from raising issues of standing related to specific claims at a later date.

evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. See Nissan Fire & Marine Ins. Co., 210 F.3d at 1102. A genuine issue of fact is one that could reasonably be resolved in favor of either party. A dispute is "material" only if it could affect the outcome of the suit under the governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

## DISCUSSION

### I. Deprivation of M. Doe's Rights

A deprivation of M. Doe's constitutional rights is a necessary predicate to claims under both Title IX and section 1983. Despite defendants' contention that there is no admissible evidence of sexual abuse or molestation of M. Doe by Cameron, plaintiffs submit a response to interrogatories which outlines Cameron's specific conduct that amounted to sexual abuse. See M. Doe's Second Supplemental Objections and Answers, Set No. 1, Exh. B, at 9:15-19 (stating that "Cameron put his finger in and/or around her vagina, and . . . he put his finger on and/or up her anus"). In addition, the answer states that these acts "occurred most recently some time during the period July 21 through August 10, 2005."[2] Exh. B at 9:16-17. This is sufficient to create a genuine issue of fact to be decided by an appropriate fact-finder. See, e.g., Dominguez-Curry v. Nevada Transp. Dept., 424 F.3d 1027, 1036 (9th Cir. 2005) (noting that it is not proper for a court to make credibility determinations regarding answers to interrogatories in a motion for summary judgment); see also Fed. R. Civ. P. 56(c) (noting that summary judgment is only proper when "the pleadings, depositions, *answers to interrogatories*, and admissions on file, together with the affidavits, if any, show

---

[2] The Court assumes that this 2005 date is an obvious typographical error in the plaintiff's answer. The next sentence in the answer reads that the other plaintiffs found out about this conduct "during the period of August 1 through about August 10, 2003." Exh. B, at p. 9:15-19. Based on the defense's motion and reply and the plaintiff's opposition, there seems to be no dispute or misunderstanding among the parties that the time period at issue concerning this conduct is 2003, not 2005.

4

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law") (emphasis added).[3]

## II. Title IX Claim

### A. Legal Standard for Municipal Liability Under Title IX

A school district may be held liable under Title IX for the sexual harassment of a student by one of its teachers only if a district official, who at minimum has authority to institute corrective measures on the district's behalf, had (1) actual notice of the teacher's misconduct and (2) was nonetheless deliberately indifferent to that intentional misconduct. See Gebser v. Lago Vista Indep. Sch. Dist., 524 U.S. 274, 277 (1998). The Supreme Court rejected the use of agency analysis, stating that it would "frustrate the purposes of Title IX" to permit recovery based on principles of *respondeat superior* or constructive notice. See Gebser, 524 U.S. at 285. The "high standard imposed in Gebser sought to eliminate any 'risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions.'" Davis v. Monroe Cty Sch. Dist., 526 U.S. 629, 643 (1999) (quoting Gebser, 524 U.S. at 290-291).

### B. Analysis

#### 1. Actual Notice

The Ninth Circuit has not addressed the contours of the actual notice standard under Gebser. Other courts have attempted to define an appropriate standard that does not require the plaintiff-student to complain of the precise type of harassment upon which the allegations are based, but which ensures that the school had sufficient knowledge to implement remedial measures that should have addressed the alleged conduct underlying the plaintiff's claims. Courts have recognized that it "requires more than a simple report of inappropriate conduct by a teacher" but less than "a clearly credible report of sexual abuse from the plaintiff-student." Doe A. v. Green, 298 F. Supp. 2d 1025, 1034 (D. Nev. 2004) (quoting Doe v. Sch. Admin Dist. No. 19, 66 F. Supp. 2d 57, 63 (D. Me. 1999). Prior complaints from the student

---

[3] Because the answers to the interrogatories are sufficient to get past summary judgment here, the Court has no occasion to determine the admissibility of statements made to the parents Doe or to M. Doe's doctor.

5

would constitute actual notice even if the conduct complained of was not identical to the subsequent allegations. See id. at 1033-1034 (citing cases). The same standard also would logically apply if a parent of the plaintiff-student or another teacher reported improper conduct to the school. The Court concurs with the pervailing standard among many other district courts around the country that "the institution must have possessed enough knowledge of the harassment that it reasonably could have responded with remedial measures to address the kind of harassment upon which plaintiff's legal claim is based." Folkes v. New York College of Osteopathic Med., 214 F. Supp. 2d 273, 283 (E.D.N.Y. 2002) (quoting Crandell v. New York College of Osteopathic Med., 87 F. Supp. 2d 304, 320 (S.D.N.Y. 2000)); see also Johnson v. Galen Health Institutes, Inc., 267 F. Supp. 2d 679, 688 (W.D. Ky. 2003) (citing cases).

There is no dispute that Anna Roche and others informed Diana Chiobotti, the Center director,[4] at a staff meeting in early 2002 of concerns about the "inappropriate" manner in which Cameron held children at times. There is also no dispute that Chiobotti responded to these concerns by discussing the proper method of holding children with Cameron after this meeting. Plaintiffs further concede that Chiobotti never received express complaints that Cameron had sexually molested or abused other students. Moreover, there is no admissible evidence in the record that the topic of Cameron's conduct in interacting with students was ever brought to the attention of Chiobotti at a different time.

The parties disagree, however, about whether Chiobotti received any complaints relating to conduct other than Cameron's inappropriate method of holding children. In her deposition, Roche describes two incidents where she witnessed what appeared to be improper conduct by Cameron. The first related to an incident where she saw Cameron inappropriately hold a child. Exh. E, at 13-18. The second incident involved an attempt by Cameron to kiss a child in a classroom. Id. at 22-24. Roche subsequently testified that she told Chiobotti about

---

[4]As the director of the daycare center, Chiobotti is the "appropriate person" to whom concerns about sexual harassment or abuse by teachers at the Center should be reported. This is a different inquiry than whether she has final policy-making authority under section 1983, discussed *infra*.

6

"the two incidents that I saw" at the staff meeting. Id. at 29. Defendants argue that Chiobotti only received complaints about inappropriate holding and she took the proper remedial measures in light of that complaint. Although the evidence supporting plaintiffs' contention that Chiobotti knew of the kissing incident is sparse, the Court must make all reasonable inferences in favor of the non-moving party on a motion for summary judgment. Accordingly, the Court finds that plaintiffs submit enough admissible evidence to infer that Roche informed Chiobotti that Cameron appeared to try to kiss a student. If true, this knowledge of sexual abuse would plainly satisfy the actual notice standard and therefore put the Center on notice that there was a substantial risk of future harassment. Because the Court finds that a genuine dispute of material fact exists as to whether the Center was on notice of the second incident involving an attempted kiss, the Court does not need to determine whether the reports of inappropriate holding are sufficient to put the Center on notice of a substantial risk of future harassment that is alleged here.

### 2. Deliberate Indifference

If actual notice is provided, an official's response is deemed "deliberately indifferent" only where the response "is clearly unreasonable in light of the known circumstances." See Davis, 526 U.S. at 648 (1999); see also Williams v. Paint Valley Local School District, 400 F.3d 360, 368 (6th Cir. 2005). This is not a mere reasonableness standard; rather, the heightened standard of "not clearly unreasonable" is more easily satisfied as a matter of law. Davis, 526 U.S. at 649.

Both parties agree that Chiobotti spoke to Cameron following the staff meeting. But the record reveals that Chiobotti merely discussed how to properly hold children with Cameron. See Deposition of Diana Chiobotti at 19-21. There is no evidence in the record to support a finding that Chiobotti took any remedial measures regarding allegations of sexual harassment. As a result, a rational trier of fact could conclude that the Center's response of speaking with Cameron about how to properly hold a child was clearly unreasonable when there is sufficient evidence in the record to support a claim that the Center was on notice that

he tried to kiss a young girl. The Court cannot find as a matter of law that the defendants' response was not clearly unreasonable. Therefore, the defendants' motion for summary judgment regarding plaintiffs' Title IX claim is DENIED.[5]

### III. Section 1983 Claim

#### A. Legal Standard for Municipal Liability Under § 1983

A city can be sued directly for monetary, declaratory, or injunctive relief under section 1983 where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 690 (1978). To establish such municipal liability, a plaintiff must satisfy four conditions: "(1) that [the plaintiff] possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that this policy 'amounts to deliberate indifference' to the plaintiff's constitutional right; and (4) that the policy is the 'moving force behind the constitutional violation.'" Van Ort v. Estate of Stanewich, 92 F.3d 831, 835 (9th Cir. 1996) (quoting Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir.1992) (citation omitted)).

A city or county may not be held vicariously liable for the unconstitutional acts of its employees under the theory of respondeat superior. See Board of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997); see also Monell, 436 U.S. at 691. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Monell, 436 U.S. at 694. For the government to be held liable on the basis of custom, there must be a pattern of "persistent and widespread discriminatory practices of state officials" which became "so permanent and well settled as to [have] the force of law." Monell, 436 U.S. at 691.

---

[5] Plaintiffs appear to make a retaliation claim under Title IX, as well, although the basis for this claim is unclear from the record. Because the Court denies summary judgment as to the harassment claim under Title IX, the Court will reserve judgment as to the retaliation claim until an appropriate time, if any.

8

**B. Analysis**

There is no dispute that neither the District nor the Center had an official or written policy instructing or allowing City officials to fail to act to prevent sexual harassment. Furthermore, plaintiffs have failed to submit sufficient evidence to support a claim that the City defendants had a "persistent and widespread" practice or custom of failing to investigate and act upon complaints of sexual harrassment. See Williams v. Paint Valley Local Sch. Dist., 400 F.3d 360, 369 (6th Cir. 2005). In fact, plaintiffs merely present evidence of a single occurrence of such behavior that does not approach the frequency required to prove that a custom exists. Although plaintiffs confuse the standard of liability in section 1983 claims with that of Title IX claims, the Court reads plaintiffs' section 1983 claim to rely upon two theories of municipal liability. First, under a theory of liability outlined in Pembaur v. City of Cincinnati, 475 U.S. 469 (1986), plaintiffs argue that Chiobotti is a policy-maker with final authority whose failure to act upon notice of a single incident of sexual harassment created a government policy subject to liability. Second, under a theory of liability outlined in City of Canton v. Harris, plaintiffs allege that Chiobotti's failure to properly train and supervise Cameron establishes a custom or policy of inadequate supervision that gives rise to municipal liability.

**1. Liability under Pembaur**

In Pembaur, the Supreme Court held that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." 475 U.S. 469, 480 (1986). Liability may be imposed based on actions of other officials "whose edicts or acts may fairly be said to represent official policy." Monell, 436 U.S. at 694. In essence, the Supreme Court has held that if a decision to adopt a certain action is made by "authorized decisionmakers," then that action is an official government policy that satisfies Monell. Pembaur, 475 U.S. at 481. Therefore, "where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." Id.

9

However, "not every decision by municipal officers automatically subjects the municipality to § 1983 liability." Pembaur, 475 U.S. at 481. The Pembaur Court stressed that "[m]unicipal liability attaches *only* where the decisionmaker possesses *final authority to establish municipal policy* with respect to the action ordered." Pembaur, 475 U.S. at 481 (emphasis added). "The fact that a particular official–even a policymaking official–has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." Id. at 481-482. Therefore, "municipal liability under § 1983 attaches where–and only where–a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Id. at 483; see also Collins v. City of San Diego, 841 F.2d 337, 341-342 (9th Cir. 1988). Whether a particular official has final policymaking authority is a question of state law, see McMillian v. Monroe County, 520 U.S. 781, 786 (1997), and should be decided as a matter of law by the judge rather than the jury. See Patel v. Penman, 103 F.3d 868, 879 (9th Cir. 1996).

### a. Chiobotti's Policy-making Authority

Whether governmental officials are policy-makers does not depend upon the exercise of policy-making authority in an "all or nothing" manner. See McMillian v. Monroe County, 520 U.S. 781, 785 (1997). The question is whether the officials are final policy-makers for the local government in a particular area, or on a particular issue. See id. Moreover, it is not sufficient to show that the particular official had discretion to make the decisions affecting the plaintiff's rights. Ulrich v. City and County of San Francisco, 308 F.3d at 985 (9th Cir. 2002).

In this instance, plaintiffs' supplemental brief on this issue fails to show that Chiobotti has policy-making authority for the City in any area. As the Director of the Center, Chiobotti has day-to-day oversight of the Center and she was the person responsible for responding to complaints about sexual harassment at the Center. But those are precisely the type of discretionary duties that Pembaur states are insufficient to establish municipal liability. In

10

truth, Chiobotti does not even have the authority to terminate an employee of the Center much less establish the City's policy on matters involving sexual harrassment. See Chiobotti Depo. at 14 (noting that she could only recommend the termination of an employee to the School Board). Plaintiffs concede as much by noting that the California school board is the only entity empowered with the final authority to make official policy for the District. Pl. Supp. Br. at 4.[6]

The Court finds that Chiobotti's authority is analogous to that of a police sergeant outlined in Collins v. City of San Diego, 841 F.2d 337 (9th Cir. 1988). There, the court stated: "Although a police sergeant may have discretion to recommend hiring, firing and discipline of employees, he or she is not the city official responsible for establishing final department policy in this area." Id. at 341. Here, Chiobotti had discretion to oversee the Center and make recommendations on a wide array of personnel matters, but she did not have final policy-making authority sufficient to establish municipal liability under this theory. Consequently, the Court concludes that plaintiffs argument under Pembaur fails as a matter of law.

### 2. Liability for Policy or Custom of Inadequate Supervision

A local government may also be liable for constitutional violations resulting from its failure to supervise, monitor or train, but only where the inadequacy of said supervision, monitoring or training amounts to deliberate indifference to the rights of the people with whom the local government comes into contact. See City of Canton v. Harris, 489 U.S. 378, 388 (1989); Davis v. City of Ellensberg, 869 F.2d 1230, 1235 (9th Cir. 1989) (holding that the same standard applies for claims of inadequate training and inadequate supervision). Only where a failure to supervise and train reflects a "deliberate" or "conscious" choice by a local government can the municipality be liable under section 1983. See Harris, 489 U.S. at 389. The Ninth Circuit has implemented Harris through a three-part test. Merritt v. County

---

[6] Plaintiffs attempt to distinguish the policy of the District and the policy of the Center. This is unpersuasive. The Center is ultimately run by the District, and District policies apply to the Center, as well. This conclusion is reemphasized by Chiobotti's acknowledgment that her recommendations ultimately go to the District's school board.

11

1  of Los Angeles, 875 F.2d 765, 770 (9th Cir. 1989).  First, a court must determine whether the
2  existing training program is adequate.  Id.  Second, whether the "policymakers of the city can
3  be reasonably be said to have been deliberately indifferent to the need" for more or different
4  training.  Id.  Third, whether the inadequate training "actually caused the constitutional
5  deprivation at issue."  Id.

6  Plaintiffs' argument fails here for a number of reasons.  First, there is no evidence of
7  an inadequate training program.  The only evidence of inadequate training or supervision of
8  school employees is the alleged failure to act by Chiobotti in this case alone.  But even if
9  Chiobotti failed to act in response to complaints about Cameron trying to kiss a student, she
10 affirmatively did act in response to complaints about Cameron inappropriately holding
11 students.  In fact, the evidence in the record supports a finding that the program of
12 supervision was more than adequate, even if a trier of fact ultimately finds that Chiobotti
13 failed to supervise Cameron properly in this one instance.  Second, there is no evidence that
14 Chiobotti's alleged inadequate training or supervision was conducted pursuant to official
15 municipal policy.  As discussed *supra*, Chiobotti does not have policy-making authority, and
16 plaintiffs submit no evidence regarding the City's policy for training and supervising
17 employees.  Finally, plaintiffs submit no evidence linking any purported inadequacies in the
18 training policies to Chiobotti's conduct.

19 To hold the City defendants liable in this case under section 1983 would amount to
20 assigning liability based on a theory of *respondeat superior,* which Monell expressly
21 disallows.  Accordingly, the Court concludes that plaintiffs' section 1983 claim fails as a
22 matter of law.  Defendants' motion for summary judgment as to the section 1983 claims is
23 therefore GRANTED.

24 **IV.  State Law Claims**
25 Plaintiffs allege a number of state law claims, some of which only apply to defendant
26 Cameron and not the City defendants.  Though the briefing on this issue is sparse, the only

12

state law claim now before the Court is plaintiffs' Twelfth cause of action for negligent hiring and supervision (or retention) of Cameron.[7]

Defendants cite a California Court of Appeals case for the proposition that municipal liability under a claim of negligent hiring or supervision depends on whether employees of the city knew or should have known of prior acts of sexual misconduct by Cameron. See Virginia G. v. ABS Unified Sch. Dist., 15 Cal. App. 1848, 1855 (Cal. App. 1993) (citing John R., 48 Cal. 3d at 453). Here, the Court finds it useful to separately address the hiring and supervision claims.

Prior to hiring Cameron in 1998, the District conducted an investigation into Cameron's background, including a check on any prior arrests or criminal convictions. See Declaration of Donald Sherratt at ¶ 3. This investigation revealed nothing unusual, and the District was not aware of any acts of sexual abuse or molestation by Cameron. Id. Plaintiffs do not provide evidence to the contrary. As a result, the Court finds that the District was not negligent in hiring Cameron in 1998 and hereby GRANTS summary judgment as to that part of the claim.

The Court determined *supra* that a genuine dispute exists as to whether Chiobotti received information alleging that Cameron attempted to kiss a student, which would satisfy any standard of sexual abuse.[8] If this is true, then it would also be true that employees of the District knew that Cameron had performed prior acts of sexual misconduct. Moreover, the standard under California law is not as strict as under Title IX; even if Chiobotti *should have* known of Cameron's conduct, she may be liable for negligent supervision. Accordingly, the Court cannot say that plaintiffs' claim for negligent supervision fails as a matter of law. Defendants' motion for summary judgment as to this part of the claim is therefore DENIED.

---

[7]Defendants also assert that under California law there is no respondeat superior liability for acts of sexual molestation of a teacher on a student. Def. Mot. at 11 (citing John R. V. Oakland Unified Sch. Dist., 48 Cal. 3d 438 (1989) (holding that individual instances of sexual harassment of students by teachers does not impute liability to the school districts under the doctrine of respondeat superior). Yet in the absence of a motion for summary judgment as to specific claims in the Amended Complaint, the Court will not issue a blanket ruling that may be an advisory opinion on that issue.

[8]None has been provided to the Court in this action.

13

**CONCLUSION**

For the foregoing reasons, City defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. Summary judgment on plaintiffs' Title IX claim is DENIED. Summary judgment on plaintiffs' section 1983 claim is GRANTED. Summary judgment on plaintiffs' negligent hiring claim under California law is GRANTED, and summary judgment on plaintiffs' negligent supervision or retention claim under California law is DENIED. Finally, because Woodstock Elementary School has no relation to the Center or defendant Cameron, all claims against it are DISMISSED.

Counsel for all remaining parties shall appear at a case management conference on March 31, 2006 at 8:30 am.

**IT IS SO ORDERED.**

Dated: March 20, 2006

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE